IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ABDUL MOHAMMED, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 16 C 2538 |
| v. | ) |
| | ) Judge Jorge Alonso |
| SIDECAR TECHNOLOGIES INC., | ) |
| SIDE.CR LLC, and/or their parent, | ) |
| subsidiaries and affiliates and successors | ) |
| (collectively, "Sidecar"), SUNIL PAUL and | ) |
| JAHAN KHANNA, individually and as | ) |
| agents of Sidecar, GENERAL MOTORS | ) |
| HOLDING COMPANY, and JOHN AND | ) |
| JANE DOE STAKEHOLDERS OF | ) |
| SIDECAR, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Abdul Mohammed, brings this lawsuit against his former employer, Sidecar Technologies, Inc. ("Sidecar"), and two of its officers,[1] making numerous claims in a sprawling twenty-one count complaint. Defendant Sidecar[2] moves to dismiss. For the following reasons, the motion is granted.

**BACKGROUND**

Sidecar was a ride-share company, apparently akin to Uber and Lyft (for whom plaintiff also worked, according to his pending lawsuits in *Mohammed v. Uber Technologies, Inc.*, case

---

[1] The complaint also names General Motors Holding Company ("General Motors") as a defendant, but it makes no allegations against General Motors. The Court granted General Motors an extension of time to file its responsive pleading until after this Court rules on Sidecar's motion to dismiss.
[2] The two Sidecar entity defendants and the two individual defendants have the same counsel. In the complaint, plaintiff does not distinguish between the defendants or specify which defendant or defendants took a particular action; he makes all allegations against "defendants," collectively. Because this usage is vague and potentially confusing, and because the allegations seem to be principally, if not entirely, directed at plaintiff's employer, from this point forward the Court will refer to the defendants collectively as "Sidecar."

1

no. 16 C 2537, and *Mohammed v. Lyft, Inc.*, case no. 16 C 2470) that ceased operations on December 31, 2015. Plaintiff began working as a driver for Sidecar in late September or early October 2014, expecting to be paid $35 per hour. He was discharged on or about December 29, 2014, and he alleges that he was not paid the full amount of wages he had earned during his period of employment.

After he was discharged, plaintiff promptly filed a charge of discrimination with the EEOC, claiming religious discrimination under Title VII, and he received a right-to-sue letter on January 6, 2015. On February 24, 2016, plaintiff filed this lawsuit, in which he has apparently abandoned his Title VII religious discrimination claim[3] and raised various new state and federal claims. Defendant moves to dismiss the complaint for failure to state a claim.

## ANALYSIS

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipsis omitted).

Under federal notice-pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. Stated differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

---

[3] Although plaintiff attaches his charge of discrimination to his complaint, the complaint does not appear to assert any Title VII claim, and Sidecar argues that any such claims are time-barred anyway. Plaintiff does not respond to this argument in his brief, so the Court deems plaintiff to have waived his Title VII claim.

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts must] accept the well-pleaded facts in the complaint as true, but [they] 'need[ ] not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-66 (7th Cir. 2013) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)).

**COUNT I: INVOLUNTARY SERVITUDE (18 U.S.C. § 1584)**

Plaintiff alleges that Sidecar recruited and employed him without providing fair and reasonable compensation. When plaintiff complained, Sidecar compelled him to stay in its employment by promising to pay back wages, but it never did. Plaintiff claims that this treatment amounted to involuntary servitude in violation of 18 U.S.C. § 1584.

The Supreme Court has defined "involuntary servitude," as the term is used in § 1584, as "a condition of servitude in which the victim is forced to work for the defendant by the use or threat of physical restraint or physical injury, or by the use or threat of coercion through law or the legal process." *United States v. Kozminski*, 487 U.S. 931, 952 (1988). Reviewing its cases decided under the Thirteenth Amendment (which, the Court held, Congress intentionally echoed in § 1584) and the legislative history of § 1584, the Court explained that the "reach [of § 1584] should be limited to cases involving the compulsion of services by the use or threatened use of physical or legal coercion." *Id.* at 948.

In his complaint, plaintiff alleges only that he was "psychologically" coerced to remain at Sidecar by the promise of back wages. In *Kozminski*, the Supreme Court specifically rejected the argument that such conduct violates § 1584, explaining that it could not accept an interpretation

3

of the statute under which an employer would be subject to criminal penalties[4] "whenever an employee asserts that his will to quit has been subdued by a threat which seriously affects his future welfare but as to which he still has a choice, however painful." 487 U.S. at 950 (citing *United States v. Shackney*, 333 F.2d 475, 487 (2d Cir. 1964) (Friendly, J.)).

In his response brief, plaintiff mentions that he was called a "terrorist," subjected to rude and aggressive language, and threatened with physical injury if he continued to demand his back pay or if he stopped working for Sidecar, but these facts are not alleged in plaintiff's complaint, the gravamen of which is that he was simply not paid the wages he was owed. These new facts do not merely add detail to the claim raised in his complaint; they attempt to transform it essentially into a different claim altogether, and it is "axiomatic . . . that a plaintiff may not amend his complaint in his response brief." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011); *see also Milazzo v. O'Connell*, 925 F. Supp. 1331, 1340 (N.D. Ill. 1996) (response brief may allege new facts consistent with the complaint, but it may not allege new claims).

Further, these new facts include very sparse, essentially conclusory allegations of physical or legal coercion; as such, even if true, they do not support a reasonable inference that Sidecar's actions genuinely compelled plaintiff to continue to work there in a condition of servitude, with no "choice" in the matter, not even a "painful" one. *See Kozminski*, 487 U.S. at 950. Plaintiff fails to state a claim in Count I.

**COUNT II: FORCED LABOR (18 U.S.C. § 1589)**

Plaintiff alleges that Sidecar committed the offense of forced labor under 18 U.S.C. § 1589, which provides as follows:

---

[4] Although it is essentially a criminal statute, Congress has provided victims of § 1584—as well as victims of any other section of Chapter 77 of Title 18 of the United States Code—with a civil remedy. *See* 18 U.S.C. § 1595.

4

> **(a)** Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means--
>> **(1)** by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
>> **(2)** by means of serious harm or threats of serious harm to that person or another person;
>> **(3)** by means of the abuse or threatened abuse of law or legal process; or
>> **(4)** by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint,
>
> shall be punished . . . .

18 U.S.C. § 1589. In his complaint, plaintiff alleges that Sidecar forced plaintiff to work by making false promises of back wages. He makes no allegation that Sidecar used or threatened force, physical restraint, serious harm, or abuse of law or legal process.

Again, as with his involuntary servitude claim, plaintiff adds additional facts in his response brief, alleging that he was called a terrorist and threatened with false criminal charges. Again, it is improper to attempt to amend the complaint in a response brief, but in any case, these additional allegations do not aid plaintiff in stating a claim. Plaintiff appears to be attempting to allege that Sidecar threatened him with abuse of legal process unless he continued to work for Sidecar, but "[a] statement is a threat if a reasonable person would believe that the intended audience would receive it as a threat, regardless of whether the statement was intended to be carried out." *United States v. Calimlim*, 538 F.3d 706, 713 (7th Cir. 2008). Plaintiff, who has shown himself in his written submissions and appearances before this Court to be an intelligent, articulate person, could not have believed that Sidecar, a private employer, had the power to cause criminal or immigration proceedings to be initiated against plaintiff by making false charges of terrorism, nor has he plausibly alleged that Sidecar made statements to him that a reasonable person in his position would have "interpreted . . . as a serious expression of an

5

intention" to frame him as a terrorist. *See United States v. Fuller*, 387 F.3d 643, 646 (7th Cir. 2004) *cited in Calimlim*, 538 F.3d at 713. Plaintiff fails to state a claim in Count II.

**COUNT III: PEONAGE (18 U.S.C. § 1581)**

Plaintiff alleges that Sidecar committed the offense of peonage under 18 U.S.C. § 1581. Peonage is "a status or condition of compulsory service, based upon the indebtedness of the peon to the master. The basal fact is indebtedness." *United States v. Reynolds*, 235 U.S. 133, 144 (1914). Plaintiff alleges in his complaint that Sidecar forced plaintiff to purchase a car in order to begin employment and "pushed [him] into peonage by not paying him the wages." (Compl., Count III, ¶ 2.)

Sidecar argues that even if these allegations were true, they would not be sufficient to state a claim for peonage, which is indebtedness of the peon *to the master*, *i.e.*, of the employee to the employer, not to a third party. Plaintiff does not allege that he was indebted to Sidecar, so, Sidecar argues, he cannot state a claim for peonage. Plaintiff responds that Sidecar unjustly benefited from plaintiff's purchase of the car because plaintiff used the car to drive for Sidecar, but Sidecar did not pay him the full amount of wages he earned. But the fact that plaintiff purchased the car with the intent to use it to work for Sidecar does not alter the requirement that, to state a claim for peonage against his employer Sidecar, plaintiff must allege that he was in debt *to Sidecar*, which he does not do. Plaintiff does not allege that he purchased the car from Sidecar or that he was in any other way indebted to Sidecar.

Additionally, to state a claim for peonage, plaintiff must allege not only that he was indebted to Sidecar but that he was not free to work anywhere else in order to pay off the debt. Peonage is the "equivalent of involuntary servitude." *United States v. Farrell*, 563 F.3d 364, 372 (8th Cir. 2009) (internal quotation marks omitted) (citing *Bailey v. Alabama,* 219 U.S. 219, 243

6

(1911)). To prove peonage, plaintiff must show that Sidecar intentionally held him against his will and coerced him to work in order to satisfy his debt by (1) physical restraint or force, (2) legal coercion, or (3) threats of legal coercion or physical force. *Farrell*, 563 F.3d at 372 (citing *Kozminski*, 487 U.S. at 952-53). As in Count I, plaintiff makes no allegations of use or threatened use of force or legal sanction. Plaintiff fails to state a claim in Count III.

**COUNT IV: BREACH OF CONTRACT**

Plaintiff alleges that Sidecar breached its employment contract with him by failing to pay him his agreed-upon wages of $35 per hour.

Sidecar argues that plaintiff has not pleaded the terms of any contract or described with specificity what work he performed without receiving adequate compensation.

Plaintiff responds that he has not attached a copy of the employment contract only because Sidecar has never provided it to him, despite plaintiff's multiple requests. He attaches to his response brief copies of emails he exchanged with Sidecar employees about his wage dispute, as well as a screenshot of a webpage or mobile advertisement for Sidecar with the large-print text, "Make $35/hour driving with Sidecar."

To state a claim for breach of contract under Illinois law, a claimant must allege: (1) the existence of a valid and enforceable contract; (2) his performance of the contract; (3) defendant's breach of the contract; and (4) that the plaintiff was damaged as a result of the breach. *Facility Wizard Software, Inc. v. Se. Tech. Servs., LLC*, 647 F. Supp. 2d 938, 946 (N.D. Ill. 2009). Plaintiff has not pleaded these elements in sufficient detail to state a plausible claim for relief. His allegations amount to a conclusory recitation of the elements of the cause of action. *See Brooks*, 578 F.3d at 582. In particular, he has not pleaded facts plausibly demonstrating that he and Sidecar reached an agreement on $35 hour; the screenshot he submits with his response brief

appears to suggest, in the nature of an advertisement, that drivers might make as much as $35 per hour, but it provides little or no support for the notion that plaintiff actually reached an agreement to drive for Sidecar for compensation at the rate of $35 per hour. *See Families of Spinal Muscular Atrophy v. Nationwide Children's Hosp.*, No. 16-CV-4262, 2016 WL 4987944, at *4–5 (N.D. Ill. Sept. 19, 2016); *Calhoun v. CitiMortgage, Inc.*, No. 13 C 8042, 2014 WL 274122, at *3 (N.D. Ill. Jan. 24, 2014); *Imagenetix, Inc. v. Walgreen Co.*, No. 11 CV 8277, 2012 WL 1231067, at *4-5 (N.D. Ill. Apr. 12, 2012). Further, plaintiff submits no records and states no specific facts to establish exactly what services he had to render, and on what terms, in order to receive compensation, nor does he even allege how much time he actually spent driving customers for Sidecar; thus, he does not state enough factual matter concerning his own performance of the agreement to raise his right to relief above the speculative level. *See Reserve Hotels PTY Ltd. v. Mavrakis*, 790 F.3d 738, 740–41 (7th Cir. 2015); *Sunny Handicraft Ltd. v. Envision This!, LLC*, No. 14-CV-1512, 2015 WL 231108, at *3 (N.D. Ill. Jan. 16, 2015). Plaintiff fails to state a claim for breach of contract.

**COUNT V: BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**

In Count V, plaintiff asserts a claim for breach of the covenant of good faith and fair dealing. Sidecar contends that this count must be dismissed because there is no independent cause of action for breach of the covenant of good faith and fair dealing under Illinois law; the covenant is used as a "construction aid" in determining the intent of the parties for purposes of resolving a breach of contract action. *See Calhoun*, 2014 WL 274122, at *3. Plaintiff does not contest the point. Because plaintiff's breach of contract claim is dismissed, his breach of the covenant of good faith and fair dealing claim is likewise dismissed.

8

**COUNT VI: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

In Count VI, plaintiff asserts a claim for intentional infliction of emotional distress. "The Illinois Supreme Court requires three elements for a claim of intentional infliction of emotional distress: (1) 'the conduct must be truly extreme and outrageous,' (2) 'the actor must either *intend* that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress,' and (3) 'the conduct must in fact cause severe emotional distress.'" *Safi v. Royal Jordanian Airlines*, No. 08 C 7365, 2010 U.S. Dist. LEXIS 116306, at *8-9 (N.D. Ill. Oct. 25, 2010) (quoting *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988)). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Pub. Fin. Corp. v. Davis*, 360 N.E.2d 765, 767 (Ill. 1976) (quoting Restatement (Second) of Torts, § 46, comment d (1965)). "Courts are cautious in their treatment of emotional distress claims in the employment domain," *Safi*, 2010 U.S. Dist. LEXIS 116306, at *9, because such things as "[p]ersonality conflicts, questioning of job performance[,] and job transfers, whether for disciplinary or management purposes, are unavoidable aspects of employment," and "if the distress from such incidents was deemed so severe that no reasonable person could be expected to endure it, nearly all employees would have a cause of action for intentional infliction of severe emotional distress," *Heying v. Simonaitis*, 466 N.E.2d 1137, 1144 (Ill. App. Ct. 1984).

Plaintiff makes some allegations of behavior (such as being called a "terrorist") that may be more than merely incidental to typical personality conflicts or questioning of job performance, but still, these sparse allegations, without more, do not describe misconduct rising to the level of outrageousness required to fall within the bounds of the tort of intentional infliction of emotional distress. *See Safi*, 2010 U.S. Dist. LEXIS 116306, at *8-9; *Curran v. JP Morgan Chase, N.A.*,

633 F. Supp. 2d 639, 643 (N.D. Ill. 2009); *Patton v. Univ. of Chi. Hosps.*, 706 F. Supp. 627, 631–32 (N.D. Ill. 1989). Plaintiff fails to state a claim in Count VI.

**COUNT VII: VIOLATION OF THE THIRTEENTH AMENDMENT**

In Count VII, plaintiff asserts a claim for violation of the Thirteenth Amendment. This Thirteenth Amendment claim duplicates plaintiff's claims in Counts I-III, which are based on enabling statutes of the Thirteenth Amendment, and it fails for the same reasons those claims do. Additionally, plaintiff does not demonstrate that he had no option to work elsewhere, as he must under the Thirteenth Amendment. *Apperson v. Ampad Corp.*, 641 F. Supp. 747, 751 (N.D. Ill. 1986). Plaintiff fails to state a claim in Count VII.[5]

**COUNT VIII: ALIEN TORT CLAIMS ACT**

In Count VIII, plaintiff asserts a claim under the Alien Tort Claims Act. Sidecar argues that the Alien Tort Claims Act, 28 U.S.C. 1350, merely gives district courts original jurisdiction over "any civil action by an alien for a tort . . . , committed in violation of the law of nations or a treaty of the United States." Thus, Sidecar contends, the statute is jurisdictional; it does not provide an independent cause of action, and plaintiff fails to state a claim by citing it.

Plaintiff does not address Count VIII in his response brief, and his omission in that regard operates as a waiver. *See Jones v. Connors*, No. 11 C 8276, 2012 WL 4361500, at *7 (N.D. Ill. Sept. 20, 2012); *Jones v. U.S. Bank Nat. Ass'n*, No. 10 C 0008, 2011 WL 663087, at *2 (N.D. Ill. Feb. 14, 2011). Sidecar's motion to dismiss will be granted as to Count VIII.

**COUNTS IX AND XV: RICO**

In Counts IX and XV, plaintiff alleges that Sidecar has violated the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 §§ U.S.C. 1961-1964, by committing a

---

[5] In the portions of their briefs devoted to Count VII, the parties argue over whether a reinstatement remedy is appropriate. The language of Count VII does not contain a request for a reinstatement remedy, and in any case, reinstatement is unavailable because Sidecar is no longer operating.

number of predicate crimes that constitute a pattern of racketeering activity from which Sidecar derived income.

> Congress enacted RICO in an attempt to eradicate organized, long-term criminal activity. . . . [RICO provides] a civil cause of action for persons whose business or property has been injured by criminal activity. 18 U.S.C. § 1964(c). . . . The elements of a RICO violation consist of "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 (1985). A pattern of racketeering activity consists of at least two predicate acts of racketeering committed within a ten-year period. 18 U.S.C. § 1961(5). Predicate acts [of "racketeering activity"] are acts indictable under a specified list of criminal laws[.] 18 U.S.C. § 1961(1)(B).

*Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1019 (7th Cir. 1992) (internal citations altered). Section 1961(1)(B) defines "racketeering activity" to include violations of 18 U.S.C. §§ 1351, 1546, and 1581-1592, as well as 8 U.S.C. § 1324—*i.e.*, the offenses that plaintiff alleges Sidecar to have committed in Counts I-III, X, XIII, XVII, XVIII and XX. The RICO statute says little about what constitutes a "pattern" of racketeering activity, but the Supreme Court has explained that predicate acts form a pattern if they are related and they "amount to, or . . . otherwise constitute a threat of, *continuing* racketeering activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989). Where—as here, considering that Sidecar is no longer operating—the alleged racketeering activity took place during a "closed period," *i.e.*, a "course of criminal conduct that has ended," *Roger Whitmore's Auto. Servs., Inc. v. Lake Cty., Ill.*, 424 F.3d 659, 672 (7th Cir. 2005), the racketeering activity may have the element of continuity necessary to constitute a "pattern" if it took place over a "substantial period of time."[6] *H.J. Inc.*, 492 U.S. at 242.

Sidecar contends that plaintiff has not alleged a pattern of racketeering activity over a sufficiently lengthy time span. Plaintiff worked for Sidecar for no more than three months, from

---

[6] The Seventh Circuit also uses a number of other factors to assess whether a series of predicate acts are a "pattern" for RICO purposes, *see Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 780 (7th Cir. 1994) (citing *Morgan v. Bank of Waukegan,* 804 F.2d 970, 975 (7th Cir. 1986)), but the Court need not address these factors because, as the following discussion will show, plaintiff's allegations of predicate acts of racketeering activity do not meet federal pleading standards.

11

approximately the beginning of October 2014 through late December 2014. This is not a "substantial" length of time for purposes of RICO continuity. *See Midwest Grinding Co.*, 976 F.2d at 1024 (citing cases). Although plaintiff purports to allege a longer pattern of racketeering activity that lasted for as long as Sidecar was in business, from 2012 through the end of 2015, Sidecar argues that plaintiff's allegations in this regard are purely speculative and conclusory because he states no basis for any personal knowledge of any racketeering activity (particularly before and after his period of employment, when it is particularly implausible that he would have obtained any such knowledge), nor does he ground his allegations in any specific factual details, such as dates, times, specifically-identified individuals, or any other facts that might raise his right to relief above the speculative level. His allegations amount to little more than recitations of the elements of the offenses.

The Court agrees that plaintiff does not state a plausible claim for relief under RICO. Even if the Court ignores the fact that plaintiff only worked at Sidecar for a period of three months and has no apparent basis for any knowledge of criminality in Sidecar's operations before and after he arrived, the allegations as a whole do not contain enough factual matter to state a claim that is plausible on its face. As the Court has explained above with respect to Counts I-III, and as it will explain below with respect to Counts X, XIII, XVII, XVIII and XX, plaintiff has not plausibly alleged that Sidecar committed any of the offenses described in those counts. Without plausible allegations of predicate acts of racketeering activity, there can be no plausible allegations of a RICO violation. Plaintiff fails to state a RICO claim in Counts IX and XV.

**COUNTS X, XVIII, AND XX: UNLAWFUL EMPLOYMENT OF ALIENS (8 U.S.C. § 1324(a)); UNFAIR IMMIGRATION-RELATED EMPLOYMENT PRACTICES (8 U.S.C. § 1324(b)); UNLAWFUL BRINGING IN AND HARBORING CERTAIN ALIENS (8 U.S.C. § 1324)**

In Counts X, XVIII and XX, plaintiff asserts claims under 8 U.S.C. § 1324. In short, § 1324 prohibits knowingly (i) bringing aliens into the United States in any unauthorized manner, (ii) transporting or moving an alien who has entered the United States in an unauthorized manner, (iii) concealing, harboring or shielding such an alien from detection, (iv) inducing an alien to enter the United States unlawfully, or (v) conspiring to commit any of the preceding acts or aiding and abetting anyone who commits them.

Sidecar correctly argues that § 1324 is a penal provision that imposes criminal penalties; it does not confer a private right of action. *See Shah v. N.Y. State Office of Mental Health*, 523 F. App'x 828, 831 (2d Cir. 2013) (citing cases).

Even if it did confer a private right of action, plaintiff has not plausibly alleged that Sidecar violated the statute. Plaintiff alleges that Sidecar hired as many as half a million people who are not authorized to work in the United States and evaded verification requirements by misclassifying them as independent contractors, but he does not specifically identify even one person Sidecar employed although it knew that the person was not authorized to work in the United States, nor does he provide any other factual details that might raise his right to relief above the speculative level. Further, plaintiff's claims are not plausible on their face because plaintiff admits that Sidecar required its employees to have Social Security numbers. (Resp. Br., ECF No. 27, at 12.) The Court could not draw a reasonable inference that Sidecar violated § 1324 based on allegations that are purely speculative and conclusory, especially when plaintiff undermines his own claim by alleging that Sidecar sought only employees with valid Social Security numbers. Plaintiff fails to state a claim in Counts X, XVIII and XX.

## COUNTS XI AND XII: VIOLATION OF THE AFFORDABLE CARE ACT AND THE ILLINOIS WORKERS COMPENSATION ACT

Plaintiff claims that Sidecar violated the Affordable Care Act and the Illinois Workers Compensation Act by misclassifying plaintiff as an independent contractor. Sidecar argues that this claim is entirely conclusory.

Sidecar is correct. Plaintiff makes no factual allegations on which the Court could base a reasonable inference that he was misclassified as an independent contractor. He claims that Sidecar has not provided him with a copy of the employment contract that he signed, but even so, as Sidecar argues, plaintiff has provided "no details of the terms of his employment relationship with [Sidecar] from which this Court could determine his status as an independent contractor." (Am. Mot. to Dismiss, ECF No. 25, at 12.) The fact that he does not have the written contract in his possession does not prevent plaintiff from alleging any facts whatsoever in support of his claims. Plaintiff fails to state a claim in Counts XI and XII.

## COUNT XIII: FRAUD AND MISUSE OF VISAS, PERMITS AND DOCUMENTS (18 U.S.C. § 1546)

In Count XIII, plaintiff asserts a claim of fraud and misuse of visas under 18 U.S.C. § 1546. He contends that Sidecar induced prospective employees to make false representations to the United States government in order to enter the United States on visas that did not authorize them to work, and then hired "half a million" such people as independent contractors to circumvent immigration status verification requirements.

Again, plaintiff's claim is conclusory and not based on specific, well-pleaded facts. As Sidecar argues, plaintiff recounts no specific actions Sidecar took, he identifies no individuals who received the sort of treatment plaintiff describes or any basis for alleging that 500,000 people did receive such treatment, and he makes no allegations having any "discernible

relationship to personal knowledge or any basis in reliable fact." (Reply Br., ECF No. 29, at 11.) Plaintiff's allegations are not sufficient to raise plaintiff's right to relief above the speculative level, as federal pleading standards require. *See Twombly*, 550 U.S. at 555. Plaintiff fails to state a claim in Count XIII.

**COUNT XIV: CONSPIRACY TO DEFRAUD THE UNITED STATES OF AMERICA (18 U.S.C. § 371)**

In Count XIV, plaintiff asserts a claim for conspiracy to commit the employment and immigration offenses described elsewhere in the complaint. Sidecar argues that there is no private right of action under § 371, so the claim should be dismissed. Plaintiff concedes the point. Even if he did not, there can be no conspiracy without an underlying offense, and, as the Court has discussed above and will discuss further below, plaintiff has not met his pleading burden as to any of the underlying offenses he asserts against Sidecar. Plaintiff fails to state a claim in Count XIV.

**COUNT XVI: FALSE CLAIMS ACT (31 U.S.C. § 3729)**

In Count XVI, plaintiff claims that defendants violated the False Claims Act, 31 U.S.C. § 3729, by encouraging foreign nationals to make false representations to the United States government in order to enter the United States and work without proper authorization. Sidecar argues that plaintiff fails to allege that Sidecar submitted any false claim for payment to the federal government or to a recipient of federal funds. *See Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989, 1996 (2016); *Ulysses, Inc. v. United States*, 110 Fed. Cl. 618, 641-42 (2013); *Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 184 (3d Cir. 2001) ("The False Claims Act seeks to redress fraudulent activity which attempts to or actually causes economic loss to the United States government. . . . It was not intended to impose liability for every false statement made to the government."). At most, plaintiff conclusorily alleges that Sidecar

15

induced false statements; he makes no allegations of false claims for payment. Plaintiff fails to state a claim in Count XVI.

**COUNT XVII: FRAUD IN FOREIGN LABOR CONTRACTING (18 U.S.C. § 1351)**

In Count XVII, plaintiff alleges fraud in foreign labor contracting under 18 U.S.C. § 1351. The statute prohibits hiring a person "outside the United States" for purposes of employment within the United States by false or fraudulent pretenses. Sidecar argues that plaintiff fails to state a claim under this statute because, according to the allegations of the complaint, Sidecar hired plaintiff for employment within the United States while he was in the United States, not while he was "outside the United States." Plaintiff vaguely alleges that Sidecar hired hundreds of thousands of employees who were not properly authorized to work in the United States, but he does not specifically allege that Sidecar contacted anyone outside the United States for purposes of employment in the United States, nor does he plausibly allege that there was anything false or fraudulent about any such efforts. Plaintiff fails to state a claim in Count XVII.

**COUNT XIX: UNLAWFULLY BRINGING ALIENS INTO UNITED STATES**

In Count XIX, plaintiff asserts a claim for unlawfully bringing aliens into the United States in violation of 8 U.S.C. § 1323. Section 1323 prohibits any "person, including any transportation company, or the owner . . . of any vessel or aircraft" from "bring[ing]" aliens into the United States without valid passports and visas. It is clear from the enumerated examples that the statute is meant to apply to carriers who physically transport aliens into the United States without the proper documentation.

At most, plaintiff alleges that Sidecar encouraged aliens to come to the United States to work for Sidecar; he never alleges, even vaguely or conclusorily, that Sidecar itself undertook to transport aliens to the United States. Plaintiff fails to state a claim in Count XIX.

**COUNT XXI: UNJUST ENRICHMENT**

In Count XXI, plaintiff asserts a claim for unjust enrichment, alleging that Sidecar unjustly enriched itself by raising millions of dollars from investors by committing the offenses plaintiff purports to describe in his complaint. Sidecar argues that plaintiff fails to state a claim for unjust enrichment because he does not allege that Sidecar retained a benefit to *plaintiff's* detriment; the only benefit he refers to in Count XXI is money raised from third-party investors. Plaintiff makes no response to this argument, and this omission operates as a waiver. Count XXI will be dismissed.

**PERSONAL JURISDICTION**

Sidecar claims that the Court does not have personal jurisdiction over the individual defendants, who are not residents of Illinois and who did not establish minimum contacts with Illinois. Indeed, Sidecar argues, they had no contacts with Illinois at all except in their capacity as officers of Sidecar, and, therefore, they are protected by the fiduciary shield doctrine, which "precludes courts from exercising jurisdiction over a non-resident corporate official when the only contacts that individual has with Illinois are made in his or her corporate capacity." *Consumer Benefit Servs., Inc. v. Encore Mktg. Int'l, Inc.*, No. 01 C 6985, 2002 WL 31427021, at *2 (N.D. Ill. Oct. 30, 2002).

The Court need not resolve this issue because, for the reasons stated above, plaintiff's complaint will be dismissed for failure to state a claim. It would be difficult—and unnecessary—to resolve the issue in any case because plaintiff does not specifically allege what

actions the individual defendants Sunil Paul and Jahan Khanna took, if any; he simply lumps the "defendants" together and refers to them collectively throughout the complaint. Not only does this prevent the Court from determining whether the individual defendants may have established minimum contacts with Illinois, it fails to provide the individual defendants with sufficient notice of precisely what wrongdoing they are alleged to have committed. This method of group pleading is improper, and it is reason enough to dismiss the complaint. *See Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) ("Each defendant is entitled to know what he or she did that is asserted to be wrongful.").

Thus, the Court need not address Sidecar's fiduciary shield argument at this time, but it will note that courts in this district have been reluctant to apply the fiduciary shield doctrine to high-ranking officers—which the individual defendants Paul and Khanna, as Chief Executive Officer and Chief Technology Officer, respectively, appear to be—especially if they are large shareholders. *See Hundt v. DirectSat USA, LLC*, No. 08C7238, 2010 WL 1996590, at *6–7 (N.D. Ill. May 17, 2010). The parties provide few details concerning Paul and Khanna's particular responsibilities that would allow the Court to determine whether Paul and Khanna were the sort of high-ranking officers with discretion over the complained-of conduct to whom the fiduciary shield doctrine would be inapplicable. *See id.* If plaintiff chooses to file an amended complaint making specific allegations against Paul and Khanna, and if Sidecar chooses to raise its fiduciary shield argument again, Sidecar will specifically address Paul and Khanna's responsibilities, whether they had discretion over the complained-of conduct, and whether they were also significant shareholders.

## **CONCLUSION**

For the reasons set forth above, defendants' motion to dismiss [25] is granted. Plaintiff may file an amended complaint, if desired, no later than December 2, 2016. If plaintiff fails to file an amended complaint on or before the December 2 deadline, this case may be dismissed for want of prosecution.

**SO ORDERED.**

**ENTERED: November 10, 2016**

---
**HON. JORGE L. ALONSO**
**United States District Judge**