**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **ABDUL MOHAMMED, an individual, on behalf of himself and others similarly situated,** | |
| **Plaintiff,** | **Case No. 1:16-cv-02538** |
| **v.** | **Hon. Jorge L. Alonso** |
| **SIDECAR TECHNOLOGIES, INC., a Delaware Corporation, SIDE.CR, LLC, a Delaware limited liability company, SUNIL PAUL, an individual, and JAHAN KHANNA, an individual,** | **Mag.** |
| | **TRIAL BY JURY DEMANDED** |
| **Defendants.** | |

**VERIFIED FIRST AMENDED COMPLAINT**

The Plaintiff, Abdul Mohammed ("PLAINTIFF"), by and through his attorneys, PFEIFFER LAW OFFICES, P.C., complains of Defendants, Sidecar Technologies, Inc. ("SIDECAR"), Side.Cr, LLC ("SIDE.CR"), Sunil Paul ("PAUL"), and Jahan Khanna ("KHANNA") (SIDECAR, SIDE.CR, PAUL and KHANNA collectively referred to as "DEFENDANTS" wherever applicable) as follows:

**Introduction**

1. The actions set forth in this *Verified First Amended Complaint* arise under the Fair Labor Standards Act ("FLSA") 29 U.S.C.A. § 201 *et seq.*, the Illinois Minimum Wage Law ("IMWL") 820 ILCS 105/1 *et seq.*, common law breach of contract, common law fraudulent misrepresentation, Racketeer Influenced and Corrupt Organizations Act ("RICO") 18 U.S.C.A. § 1961 *et seq.*, and successor liability.

**Jurisdiction and Venue**

2. Jurisdiction is conferred on this Court by the aforesaid statutes, as well as by 28 U.S.C. §§1332 as the amount in controversy exceeds $75,000.00.

3. Venue of this action properly lies in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. §1391(c).

**The Parties**

4. During all times relevant to this Complaint, PLAINTIFF is currently residing in DuPage County, Illinois.

5. During all times relevant to this Complaint, DEFENDANTS were and are involved in providing transportation services pursuant to both the laws of the United States and Illinois.

6. During all times relevant to this Complaint, PAUL was and is a permanent resident of the United States, currently residing in the state of California.

7. During all times relevant to this Complaint, KHANNA was and is a permanent resident of the United States, currently residing in the state of California.

8. During all times relevant to this Complaint, PAUL was the chief executive officer of SIDECAR and SIDE.CR.

9. During all times relevant to this Complaint, KHANNA was the chief technology officer of SIDECAR and SIDE.CR.

10. During all times relevant to this Complaint, GMC is now the successor-in-interest to SIDECAR, SIDE.CR, and PAUL after its asset purchase of all property of SIDECAR and SIDE.CR and its subsequent employment of PAUL.

11. During all times relevant to this Complaint, SIDECAR and SIDE.CR constituted an "enterprise" as the term is defined in the FLSA because they performed related activities (either

through unified operation or common control) for a common business purpose – namely, transportation and delivery services – the value of which exceeds $500,000.00 annually.

12. PAUL was PLAINTIFF'S "employer" pursuant to 29 U.S.C. § 203(d), and 820 ILCS § 105/3.

13. KHANNA was PLAINTIFF'S "employer" pursuant to 29 U.S.C. § 203(d), and 820 ILCS § 105/3.

14. SIDECAR was PLAINTIFF'S "employer" pursuant to 29 U.S.C. § 203(d), and 820 ILCS § 105/3.

15. SIDE.CR was PLAINTIFF'S "employer" pursuant to 29 U.S.C. § 203(d), and 820 ILCS § 105/3.

## **Factual Allegations Common to All Counts**

16. Prior to October 1, 2014, PLAINTIFF received an offer of employment from DEFENDANTS stating that all new drivers would be paid at an hourly rate of thirty-five dollars ($35.00) per hour to provide transportation services on behalf of the SIDECAR PARTIES.

17. PLAINTIFF would provide all out-of-pocket driving expenses including, but not limited to, gasoline, cellular phone, and vehicle maintenance.

18. In return, DEFENDANTS would provide insurance coverage for PLAINTIFF while he was driving on the behalf of DEFENDANTS.

19. PLAINTIFF subsequently submitted his application for employment and on October 1, 2014, officially became an employee of DEFENDANTS when he was hired as a driver on their behalf.

20. On October 1, 2014, Alexandra ("ALEX"), a driver support manager and representative of DEFENDANTS informed PLAINTIFF that he has been officially employed by the

aforementioned parties and that he would receive a copy of his employment contract within the coming days via United States Postal Service.

21.     In October of 2014, ALEX on the behalf of PAUL, informed PLAINTIFF that he could receive additional compensation for the recruitment of friends or family members who would also work on the behalf of DEFENDANTS.

22.     DEFENDANTS promised to pay PLAINTIFF a sum for each additional driver recruited and employed by DEFENDANTS.

23.     During PLAINTIFF'S tenure as an employee with DEFENDANTS, he recruited one individual to work on the behalf of DEFENDANTS and received one-hundred dollars ($100.00) as compensation for said referral.

24.     DEFENDANTS instructed PLAINTIFF to recruit individuals from other states who were unable to obtain driver's licenses as they were undocumented workers since Illinois does not require proof of lawful immigration status prior to the issuing of a driver's license.

25.     Further, PAUL stated that they would pay any potential driver $1,000.00 to move to Illinois from a different state in an effort to quickly amass the amount of drivers needed to establish SIDECAR and SIDE.CR in the Chicagoland area.

26.     In November of 2014, DEFENDANTS again contacted PLAINTIFF regarding the recruitment of drivers on the behalf of DEFENDANTS.

27.     ALEX informed PLAINTIFF that DEFENDANTS would provide Amtrak or Greyhound transportation services for any undocumented worker who did not have a valid identification card as said individuals would not be able to obtain air travel due to their lack of documentation.

28.     Subsequently, in November of 2014, PAUL offered PLAINTIFF $500.00 to travel to Elkhart, Indiana in order to transport various undocumented workers to Illinois to facilitate DEFENDANTS'S attempts to obtain additional employees.

29. PLAINTIFF refused said offer as he felt that requested actions would be illegal and would jeopardize his citizenship status.

30. PAUL berated PLAINTIFF for his unwillingness to accept his offer to transport undocumented workers from Indiana to Illinois.

31. Through November and December of 2014, DEFENDANTS again requested that PLAINTIFF transport various individuals from Indiana to Illinois.

32. PLAINTIFF again refused to be involved with the transportation of any potentially undocumented workers across state lines.

33. During PLAINTIFF'S employment with DEFENDANTS, DEFENDANTS either refused to pay all of the wages owed to PLAINTIFF or were severely deficient in the timely payment of his compensation for the work that had already been completed on their behalf.

34. In December of 2014, DEFENDANTS requested that PLAINTIFF transport individuals from Indiana to Wisconsin and that in exchange for doing so, DEFENDANTS would pay all of PLAINTIFF'S overdue wages.

35. PLAINTIFF again refused said offer and requested that he be paid in full as agreed between the parties.

36. For nearly two months, PLAINTIFF requested on numerous occasions that he be paid for his employment yet DEFENDANTS failed to provide payment for said work.

37. On December 29, 2014, DEFENDANTS terminated PLAINTIFF from his employment.

**PLAINTIFF'S employment with DEFENDANTS**

38. DEFENDANTS required that PLAINTIFF and other drivers conform to certain requirements in order to be employed by SIDECAR and SIDE.CR.

39. Upon information and belief, DEFENDANTS classified all of its drivers, including PLAINTIFF, as independent contractors despite exerting significant control over the manner in which they performed their work.

40. DEFENDANTS required all of their drivers, including PLAINTIFF, to adhere to the following regulations and requirements, including, but not limited to the following:

- Minimum and maximum price rates for all rides;
- Minimum and maximum price multipliers;
- Maximum and minimum pick up and drop off radiuses for customers and drivers;
- Required mandatory trade dress;
- Required condition of each and every vehicle;
- Required drivers to offer various accommodations such as drinks, snacks, and cigarettes to riders;
- Required that drivers advertise what accommodations the driver was providing on any given day;
- Required drivers to accept all rides regardless of price or duration;
- Required all drivers to report to SIDECAR and SIDE.CR after every completed or uncompleted ride;
- Required that drivers include certain items on their cars indicating that they are an employee of SIDECAR and SIDE.CR;
- If a ride lasted for less than a certain duration, SIDECAR and SIDE.CR would require that the driver only be paid a certain amount and would override the amount set by the driver;
- SIDECAR and SIDE.CR set special weekend, event, or holiday pricing for all drivers regardless of distance, difficulty, or duration;
- Required that all drivers meet with a designated representative of DEFENDANTS during their employment.

41. During PLAINTIFF'S tenure of employment with DEFENDANTS, SIDECAR and SIDE.CR failed to pay their drivers one-and-a-half times their regular hourly rate of pay for hours worked in excess of forty in a workweek.

42. Despite DEFENDANTS'S agreement with PLAINTIFF, they never paid their delivery drivers the minimum wage required by the FLSA, IMWL, or the Ordinance.

## Allegations common to the Collective and Class

43. PLAINTIFF brings the claims set forth in Count I, alleging violations of the FLSA minimum wage provisions, as an opt-in representative or collective action on behalf of himself and an "**FLSA Minimum Wage Class**," consisting of all drivers who have or are working for DEFENDANTS between October 1, 2014 and February 2, 2017 and who were paid a regular rate of less than $7.25 per hour.

44. PLAINTIFF brings the claims set forth in Count II, alleging violations of the FLSA overtime provisions, as an opt-in representative or collective action on behalf of himself and an "**FLSA Overtime Class**," consisting of all delivery drivers who worked for DEFENDANTS between October 1, 2014 and February 2, 2017 and who worked in excess of forty hours in a workweek.

45. PLAINTIFF brings the claims set forth in Count II, alleging violations of the IMWL overtime provisions, as a Rule 23 class action on behalf of himself and an "**IMWL Overtime Class**," consisting of all delivery drivers who worked for SIDECAR and SIDE.CR between October 1, 2014 and February 2, 2017 and who worked in excess of forty hours in a workweek.

46. The classes defined above satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure and 29 U.S.C. § 216(b).

47. The Rule 23 Class described above is so numerous and geographically dispersed that joinder of all members is impracticable, and the disposition of their claims in a class action

will provide substantial benefits to both the parties and the Court. The Class includes at least 40 drivers.

48. Common questions of law and fact predominate over individual issues affecting only individual class members.

49. These common issues of law and fact include, among others, whether DEFENDANTS had a common policy of misclassifying drivers as independent contractors for purposes of the IMWL and whether DEFENDANTS denied PLAINTIFF and other putative class members overtime premium pay for hours worked in excess of forty hours in one workweek.

50. PLAINTIFF will fairly and adequately protect the interests of all class members.

51. PLAINTIFF is a member of each aforementioned subclass.

52. PLAINTIFF'S claims are typical of the claims of all class members.

53. PLAINTIFF'S interests in obtaining monetary relief for SIDCAR PARTIES'S violations of the class members' rights is consistent with and not antagonistic to those of any person within the classes.

54. A class action is superior to other methods for fair and efficient adjudication of the controversy alleged in this Complaint.

55. Class action treatment will permit a large number of similarly situated person to prosecute their modest, common claims, in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would require.

56. The Court is not likely to encounter any difficulties that would preclude it from maintaining this case as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

57. Individualized litigation would present the potential for inconsistent or contradictory judgments.

**Count I – Violation of FLSA – Minimum Wage Claim**
**PLAINTIFF VS. DEFENDANTS**

58. PLAINTIFF restates and incorporates herein by reference Paragraphs 1 through 53 above as and for Paragraph 54 of Count I of this Complaint as if such allegations were fully set forth herein.

59. DEFENDANTS employed PLAINTIFF and other putative class members because they permitted them to drive on behalf of said entities and exerted substantial control over the manner in which the drivers performed their work.

60. DEFENDANTS did not pay PLAINTIFF or other putative class members $7.25 per hour for all hours worked in a workweek.

61. DEFENDANTS FLSA violations were willful.

**WHEREFORE**, PLAINTIFF respectfully requests that this Court enter an order:

A. Certifying this case as a collective action pursuant to 29 U.S.C. § 216(b);

B. Enter judgment in an amount equal to all unpaid minimum wages due and owing to PLAINTIFF and all putative class members as well as all applicable liquidated damages;

C. Declaring that SIDECAR'S, SIDE.CR'S, PAUL'S and KHANNA'S conduct violated the FLSA;

D. Award PLAINTIFF and putative class members their reasonable attorneys' fees and costs of this action;

E. Provide PLAINTIFF and putative class members with such other and further relief as this Honorable Court deems appropriate and just.

**Count II – Violation of FLSA – Overtime Claim**
**PLAINTIFF VS. DEFENDANTS**

62. PLAINTIFF restates and incorporates herein by reference Paragraphs 1 through 57 above as and for Paragraph 58 of Count II of this Complaint as if such allegations were fully set forth herein.

63. DEFENDANTS employed PLAINTIFF and other putative class members because former permitted the latter to be drivers on their behalf and exerted substantial control over the manner in which the drivers performed their work.

64. PLAINTIFF and other putative class members regularly worked more than forty hours per week for DEFENDANTS.

65. DEFENDANTS never paid PLAINTIFF and other putative class members time-and-a-half for time worked over forty hours per workweek.

66. DEFENDANTS'S FLSA violations were willful.

**WHEREFORE**, PLAINTIFF respectfully requests that this Court enter an order:

A. Certifying this case as a collective action pursuant to 29 U.S.C. § 216(b);

B. Enter judgment in an amount equal to all unpaid overtime wages due and owing to PLAINTIFF and all putative class members as well as all applicable liquidated damages;

C. Declaring that SIDECAR'S, SIDE.CR'S, PAUL'S and KHANNA'S conduct violated the FLSA;

D. Award PLAINTIFF and putative class members their reasonable attorneys' fees and costs of this action;

E. Provide PLAINTIFF and putative class members with such other and further relief as this Honorable Court deems appropriate and just.

**Count III – Violation of IMWL – Overtime Claim**
**PLAINTIFF VS. DEFENDANTS**

67. PLAINTIFF restates and incorporates herein by reference Paragraphs 1 through 62 above as and for Paragraph 63 of Count III of this Complaint as if such allegations were fully set forth herein.

68. DEFENDANTS employed PLAINTIFF and other putative class members because it permitted them to provide transportation services for a fee and exerted substantial control over the manner in which the drivers performed their work.

69. PLAINTIFF and putative class members frequently worked for DEFENDANTS in excess of forty hours in a workweek.

70. DEFENDANTS did not pay PLAINTIFF and other putative class members one-and-a-half times their regular rate of pay for hours worked in excess of forty hours in a workweek.

**WHEREFORE**, PLAINTIFF respectfully requests that this Court enter an order:

A. Certifying this case as a collective action pursuant to 29 U.S.C. § 216(b);

B. Enter judgment in an amount equal to all unpaid overtime wages due and owing to PLAINTIFF and all putative class members as well as all applicable liquidated damages;

C. Declaring that SIDECAR'S, SIDE.CR'S, PAUL'S and KHANNA'S conduct violated the FLSA;

D. Award PLAINTIFF and putative class members their reasonable attorneys' fees and costs of this action;

E. Provide PLAINTIFF and putative class members with such other and further relief as this Honorable Court deems appropriate and just.

**Count IV – Breach of Contract**
**PLAINTIFF VS. DEFENDANTS**

71. PLAINTIFF restates and incorporates herein by reference Paragraphs 1 through 66 above as and for Paragraph 67 of Count IV of this Complaint as if such allegations were fully set forth herein.

72. Prior to October 1, 2014, DEFENDANTS offered to employ PLAINTIFF for the position of driver at a rate of $35.00 per hour.

73. PLAINTIFF accepted DEFENDANTS'S offer of employment, and subsequently started his employment on October 1, 2014.

74. During PLAINTIFF'S employment with SIDECAR and SIDE.CR, he never received $35.00 per hour for all hours worked.

75. DEFENDANTS breached the employment contract with PLAINTIFF by failing to pay him the agreed upon wage.

**WHEREFORE**, PLAINTIFF respectfully requests that this Honorable Court:

A. Enter judgment in favor of PLAINTIFF and against DEFENDANTS, jointly and severally, in an amount as proven by the evidence in this case;

B. Award PLAINTIFF his costs of suit, other litigation costs, accrued interest, and attorneys' fees incurred in this matter to the extent permitted by law; and

C. Provide PLAINTIFF with such other and further relief as this Honorable Court deems appropriate and just.

**Count V – Fraudulent Misrepresentation – As to the contractual terms of employment**
**PLAINTIFF VS. DEFENDANTS**

76. PLAINTIFF restates and incorporates herein by reference Paragraphs 1 through 71 above as and for Paragraph 72 of Count V of this Complaint as if such allegations were fully set forth herein.

77. DEFENDANTS stated to PLAINTIFF that he would receive an hourly rate of compensation of $35.00.

78. At the time of DEFENDANTS aforesaid statement, DEFENDANTS did not intend to provide said compensation to PLAINTIFF.

79. DEFENDANTS knew that this promise to pay the aforementioned hourly rate to PLAINTIFF was false at the time of the making of such statement.

80. DEFENDANTS made said statements with the intent to induce PLAINTIFF to work for SIDECAR and SIDE.CR.

81. DEFENDANTS'S statements were false insofar as they never provided PLAINTIFF with said hourly rate.

82. DEFENDANTS knew that all of their aforesaid statements to PLAINTIFF were false.

83. PLAINTIFF relief upon DEFENDANTS'S aforesaid statements in the hope that they would pay said hourly wage.

**WHEREFORE**, PLAINTIFF respectfully requests that this Honorable Court:

A. Enter judgment in favor of PLAINTIFF and against SIDECAR, SIDE.CR, PAUL, and KHANNA, jointly and severally, in an amount as proven by the evidence in this case;

B. Award PLAINTIFF punitive damages for SIDECAR'S, SIDE.CR'S, PAUL'S, and KHANNA'S willful and wanton misconduct in conducting their business affairs;

C. Award PLAINTIFF its costs of suit, other litigation costs, and attorneys' fees incurred in this matter to the extent permitted by law; and

D. Provide PLAINTIFF with such other and further relief as this Honorable Court deems appropriate and just.

**Count VI – Fraudulent Misrepresentation – As to the back wages**
**PLAINTIFF VS. DEFENDANTS**

84. PLAINTIFF restates and incorporates herein by reference Paragraphs 1 through 79 above as and for Paragraph 80 of Count VI of this Complaint as if such allegations were fully set forth herein.

85. DEFENDANTS stated to PLAINTIFF that he would receive all of his back wages that he earned during his employment.

86. At the time of DEFENDANTS aforesaid statement, DEFENDANTS did not intend to provide to PLAINTIFF his back wages that he had earned, but has yet to receive.

87. DEFENDANTS knew that this promise to provide PLAINTIFF his back wages was false at the time of the making of such statement.

88. DEFENDANTS made promises to PLAINTIFF that he would receive his aforementioned wages with the intent to induce PLAINTIFF into continuing his employment.

89. DEFENDANTS'S statements were false insofar as PLAINTIFF has yet to receive his back wages.

90. DEFENDANTS knew that all of the aforesaid statements to PLAINTIFF were false.

91. PLAINTIFF relied upon DEFENDANTS'S aforesaid statements in the hope that his back wages would be forthcoming and that he would be able to continue his employment.

**WHEREFORE**, PLAINTIFF respectfully requests that this Honorable Court:

A. Enter judgment in favor of PLAINTIFF and against SIDECAR, SIDE.CR, PAUL, and KHANNA, jointly and severally, in an amount to be proven by the evidence in this case;

B. Award PLAINTIFF punitive damages for SIDECAR'S, SIDE.CR'S, PAUL'S, and KHANNA'S willful and wanton misconduct in conducting their business affairs;

C. Award PLAINTIFF its costs of suit, other litigation costs, and attorneys' fees incurred in this matter to the extent permitted by law; and

D. Provide PLAINTIFF with such other and further relief as this Honorable Court deems appropriate and just.

## Count VII – Violation of 18 U.S.C. § 1961 *et seq.*
## PLAINTIFF VS. DEFENDANTS

92. PLAINTIFF restates and incorporates herein by reference Paragraphs 1 through 91 above as and for Paragraph 92 of Count VII of this Complaint as if such allegations were fully set forth herein.

93. Between October of 2014 and November of 2014, the DEFENDANTS directed the operation of its drivers in a drive-sharing operation and by doing so, recruited and managed the recruitment of drivers.

94. Between October of 2014 and November of 2014, the DEFENDANTS on at least two occasions engaged in a pattern of racketeering activity that involved violations of the Immigration and Nationality Act.

95. Specifically, the DEFENDANTS violated Section (a)(1)(A)(ii) by facilitating the transport and movement of aliens throughout the United States. 8 U.S.C. §1324(a)(1)(A)(ii).

96. Additionally, the DEFENDANTS violated Section (a)(1)(A)(iv) by encouraging or inducing aliens and encouraging and inducing its drivers to recruit aliens to drive for the DEFENDANTS.

97. In October of 2014, PAUL directed PLAINTIFF to recruit aliens as drivers for the DEFENDANTS by conferences over the telephone.

98. Specifically, in October of 2014, PAUL directed PLAINTIFF to find friends and family members in India and to induce them to come to the United States and drive for the DEFENDANTS.

99. Further, in October of 2014, ALEX told PLAINTIFF over the phone that he was expected to recruit family and friends from overseas as a condition to his employment.

100. In November of 2014, PAUL told PLAINTIFF over a telephone conversation that the DEFENDANTS would assist aliens residing in other states in obtaining Illinois driving licenses in order for them to drive for the DEFENDANTS.

101. Additionally, in November of 2014, ALEX told PLAINTIFF by telephone that the DEFENDANTS would purchase tickets through Amtrak or Greyhound for any aliens that PLAINTIFF was aware of that would move to Illinois and drive for the DEFENDANTS.

102. Further, in November of 2014, PAUL called PLAINTIFF and directed him to drive to Elkhart, Indiana, and pick up a group of aliens and bring them back to Illinois to be employed by the DEFENDANTS, and that PAUL would pay PLAINTIFF $500.00 for doing so.

103. PLAINTIFF refused to pick up the group of aliens and was called a derogatory term by PAUL before PAUL asked him to find someone else who was willing to do the job.

104. Following that conversation, PLAINTIFF had several additional conversations with PAUL, KHANNA, ALEX, and another Driver Support Manager named Lily who all directed PLAINTIFF to transport aliens to Illinois from Michigan, Iowa, Wisconsin, and Indiana. PLAINTIFF refused each direction.

105. In December of 2014, PAUL and KHANNA told PLAINTIFF via telephone that if he participated in an alien pickup and transfer, they would pay PLAINTIFF'S back wages that PLAINTIFF was demanding. PLAINTIFF again refused to transport.

106. The DEFENDANTS'S multiple attempts to direct PLAINTIFF to transport aliens, and to induce aliens to drive for the DEFENDANTS constituted a pattern of at least two racketeering activities.

107. The multiple attempts to direct PLAINTIFF to engage in a conspiracy to violate the Immigration and Nationality Act constituted a pattern of at least two racketeering activities.

108. Because PLAINTIFF refused to participate in the DEFENDANTS'S racketeering activities, he was damaged insofar as he was refused his back wages, and eventually terminated from his employment.

**WHEREFORE**, PLAINTIFF respectfully requests that this Honorable Court:

A. Enter judgment against the DEFENDANTS and in favor of PLAINTIFF for the DEFENDANTS'S violation of 18 U.S.C. §1961 *et al.*;

B. Award PLAINTIFF his damages threefold that occurred due to the activity conducted by the DEFENDANTS that damaged PLAINTIFF in an amount to be determined at trial;

C. Award PLAINTIFF his costs of suit, reasonable attorneys' fees; and

D. Provide PLAINTIFF with such other and further relief as this Honorable Court deems appropriate and just.

**DEMAND FOR JURY TRIAL**

PLAINTIFF hereby makes a demand for trial by jury on all issues herein that are triable to a jury.

Respectfully submitted,

**ABDUL MOHAMMED, *Plaintiff***

By: /s/ Oran D. Cart
One of His Attorneys

J. Matthew Pfeiffer, Esq.
IL Atty. No. 6272868
Oran D. Cart, Esq.
IL Atty. No. 6320411
PFEIFFER LAW OFFICES, P.C.
1725 S. Naperville Road Suite 205
Wheaton, Illinois 60189
Tel: (630) 517-0808
Fax: (630) 517-0809

**VERIFICATION**

Under penalties as provided by law, the undersigned person certifies and declares that the statements set forth in the foregoing *Verified First Amended Complaint* are true, correct, and complete; that such person has not knowingly withheld any pertinent information; and, as to statements made upon information and belief, that such person verily believes the same to be true.

Date: 02/03/2016

Abdul Mohammed